**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| MARY T. MORGAN, and<br>RONALD D. HARRISON, | ) )<br>) ) |
| Plaintiffs, | ) ) |
| v. | )    Civil No. 04-223 Erie<br>) |
| FIRST FINANCIAL MORTGAGE<br>GROUP, INC. | ) )<br>) ) |
| Defendant. | ) )<br>) |


### Opinion and Order

Plaintiffs Mary T. Morgan and Ronald D. Harrison commenced this action against

Defendant First Financial Mortgage Group, Inc. ("FFMG") for breach of a mortgage contract, fraud,

and violation of Pennsylvania's Uniform Trade Practice and Consumer Protection Law, 73

PA.S.C.A §§ 201-1, Et. Seq. (UTPCPL). FFMG has filed a motion to dismiss, to which Plaintiffs

have filed a Response. The parties have also filed cross-motions for sanctions. For the reasons

stated below, we will grant Defendant's motion to dismiss and deny the motions for sanctions.

## I. Background

On August 1, 2003 Plaintiffs, Mary T. Morgan and Ronald D. Harrison, entered into a

written mortgage agreement with Union Planters Bank, N.A. (Complaint, at ¶ 8.) Defendant, First

FFMG, acting as a broker, procured the mortgage for the Plaintiffs. (Complaint, at ¶ 9.) Larry

Sexton, a Senior Loan Officer of FFMG arranged for the contract. (Complaint, at ¶ 11.) The stated

terms of the agreement were for a thirty-year $53,600 loan at 7% interest. (Complaint, at ¶ 8.)

Plaintiffs allege that at all relevant times Mr. Sexton told them that the actual loan they

would receive would be a $53,600 loan at 5.25% interest, for a period of 22.8 years. (Complaint, at

¶¶ 10, 11.) Plaintiffs further allege that Mr. Sexton provided Plaintiffs with a handwritten worksheet, showing that the loan would be at a 5.25% interest rate for 22.8 years. (Complaint, at ¶ 13, & Ex. 2, attached to Complaint.)   At the closing, Plaintiffs realized that the mortgage contract was not for  a 5.25% rate but instead showed a 7% rate for 30 years, and therefore questioned Mr. Sexton about this discrepancy. (Complaint, at ¶ 16; Affidavit of Ronald L. Harrison, May 26, 2004, at ¶ 4, attached as Ex. 2 to Complaint.) Mr. Sexton told Plaintiffs that the loan would convert or "Roll over" to a 5.25% interest rate upon submission. (Complaint, at ¶ 16; Affidavit of Ronald L. Harrison, at ¶ 5.) Relying on Mr. Sexton's representations, Plaintiffs signed the mortgage contract. The interest rate did not convert to a 5.25% rate, and thus Plaintiffs have brought this action.

Plaintiffs aver three causes of action.  In Count I, Plaintiffs allege a breach of contract based on FFMG fraudulently inducing Plaintiffs to enter into the mortgage contract by falsely promising a 5.25% rate.  Based upon the same conduct, Plaintiffs allege in Count II a claim of fraud and deceit. Finally, in Count III Plaintiffs claim FFMG's actions violate Pennsylvania's Uniform Trade Practice and Consumer Protection Law, 73 PA.S.C.A §§ 201-1, Et. Seq. (UTPCPL).  Plaintiffs seek recession of the contract, money damages, punitive damages, treble damages for violation of the UTPCPL, and counsel fees.

**II. Standard of Review**

A motion to dismiss pursuant to Federal Rule 12(b)(6) tests the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985).  "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). While a court will accept well-pleaded allegations as true for purposes of the motion, it will not

2

accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, *Ga.*, 433 U.S. 25, 27 n.2 (1977).

As an initial matter, we must determine the extent of our consideration of the materials submitted by the parties. "When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)); see also Rogan v. Giant Eagle, Inc., 113 F. Supp.2d 777, 782 (W.D. Pa. 2000). "'Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.'" Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002) (quoting 62 Fed.Proc., L.Ed. § 62:508). Here, we may consider the documents submitted by FFMG that comprise the primary documents of the mortgage contract that is the basis of Plaintiffs' claims. The mortgage contract is alleged in the Complaint and neither party questions the authenticity of these documents. Pryor, 288 F.3d at 560.

## III. Discussion

FFMG moves to dismiss this action for failure to state a claim arguing that Plaintiffs' evidence in support of their claims is barred by the parol evidence rule. In the alternative, FFMG argues that even if Plaintiffs' parol evidence is admitted it is plain that no relief could be granted consistent with the allegations.

### A. Whether the Parol Evidence Rule Bars Plaintiffs' Evidence

FFMG first argues that Plaintiffs' Complaint should be dismissed in its entirety because the only evidence in support of Plaintiffs' claims is barred by application of Pennsylvania's parol evidence role. In addition, FFMG argues that the parol evidence rule bars Plaintiffs' UTPCPL claim because Plaintiffs cannot claim to have justifiably relied upon the representations made before

3

executing an integrated contract. Without this supporting evidence Plaintiffs are left with the terms of the mortgage contract they entered into and would be unable to support their allegation that the interest rate is 5.25%.

### 1. Applicable Law on Parol Evidence

"'Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.'" Yocca v. The Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (quoting Giannia v. Russel & Co., 126 A. 791, 792 (Pa. 1924)). "'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.'" Yocca, at 436 (quoting Gianni, 126 A. at 792).

The "'purpose of the parol evidence rule is to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous oral declarations.'" Kehr Packages, Inc. v. Fidelity Bank, 710 A.2d 1169, 1173 (quoting Lenzi v. Hahnemann University, 664 A.2d 1375, 1379 (Pa. Super. 1995)). "[F]or the parol evidence rule to apply, there must be a writing that represents the 'entire contract between the parties.'" Yocca, at 497 (quoting Gianni at 792). A written final and complete expression of the parties' agreement is considered an "integrated" agreement. Kehr, 710 A.2d at 1173. "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." Yocca, at 436-437.

Plaintiffs' fraud claim is "directly based on the contractual agreement" and, as such, it can only be brought as part of Plaintiffs' "breach of contract claim[] rather than as [a] separate tort claim[]." Yocca , 854 A.2d at 433. Therefore, the analysis set forth below applies to both the breach of contract and fraud claims.

### 2. Application of the Parol Evidence Rule

We must first determine whether the parties' written agreement is integrated, that is whether it represents the entire contract between the parties. If it is an integrated agreement, it is the only evidence of their agreement and Plaintiffs' parol evidence will be barred, unless an exception to the parol evidence rule is applicable. Plaintiffs claim that the mortgage contract in not an integrated agreement. Plaintiffs also argue that even if the parol evidence rule applies initially, the fraud exception is applicable in this case.

### a.  Whether the Mortgage Contract is an Integrated Agreement

Plaintiffs claim that neither the Mortgage Note nor the Mortgage is an integrated contract. (Plaintiffs' Opposition to Defendant's Motion to Dismiss, at ¶ 8.) They also claim that the contract they executed is "not an integrated contract, . . . ." (Id. at  ¶ 12; see also id. ¶ 15.) Unfortunately, Plaintiffs do not present an argument to explain why they believe the contract is not integrated. At best, Plaintiffs appear to rest their claim on the Pennsylvania Supreme Court's assertion that

> "[a]n integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution."

(Plaintiffs' Memorandum of Law, at 11 (quoting Yocca, 894 A.2d at 436) (emphasis supplied by Plaintiffs).) We presume, again because Plaintiffs do not set forth the argument, that Plaintiffs contend that because the instant mortgage contract does not contain an integration clause then the contract itself is not an integrated contract.

Of course, it is not a *requirement* that a contract contain an integration clause in order to be deemed an integrated contract, it is rather a "clear sign" that the parties intended the contract be an

5

integrated contract.  Yocca, 894 A.2d at 436.  The Pennsylvania Supreme Court set out the actual

inquiry for the court to undertake in determining whether an agreement is integrated:

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties...."

Id. (citation omitted).  The written contract here does not contain an integration clause, and thus we

must examine the text of the agreement to determine whether it is fully integrated.  Henry v. First

Federal Savings & Loan Assoc., 459 A.2d 772, 776 (Pa. Super. 1983).

While Plaintiffs fail to argue in support of their assertion that the agreement is not

integrated, FFMG's barely surpasses Plaintiffs' effort.  FFMG's argument is contained in one

sentence:

> While the mortgage contract at issue in the instant case does not contain an integration clause per se, it is clear by its very nature as a mortgage contract, and from a review of the agreement itself, that the contract was meant to be a final and complete expression of the parties' agreement.  (See Note).

(Defendant's Memorandum of Law in Support of Its Motion to Dismiss, at 5.)  Despite this minimal

argument, we agree with FFMG.

The Mortgage Note here clearly sets out the critical terms of the parties' agreement: the

principle amount, the lending institution, the interest rate, the time and place of monthly payments,

the monthly payment amount, Plaintiffs' right to prepay the loan, the consequences of the failure to

pay as required, where notices are to be mailed, and that all signers of the Note are obligated

thereunder.  (Note, Ex. A to Defendant's Motion to Dismiss.)

Moreover, the representations made by Mr. Sexton that the interest rate would be 5.25% is

directly addressed in the Mortgage Note, which states to the contrary that the interest rate is 7.00%:

> **2. INTEREST**
>
> Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.00 %.

(Note, at ¶ 2, Ex. A to Defendant's Motion to Dismiss.)   The Note also states that Plaintiffs agree to

6

"pay principal and interest by making a payment every month" in the amount of $356.60. (Note, at ¶ 3, Ex. A to <u>Defendant's Motion to Dismiss</u>.) The alleged oral agreement that the interest rate would be 5.25% and the written agreement that the rate is 7.0% relate to the same subject-matter, and are in fact the same subject matter. <u>Kehr Packages</u>, 710 A.2d at 1174. Thus, Mr. Sexton's representations are "precisely the type of thing that would naturally and normally have been contained in the written" agreement. <u>Id.</u> Where, as here the "written agreement and the alleged oral agreement "'relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the [oral] agreement must be taken to be covered by the writing.'" <u>Id.</u>, 710 A.2d at 1174 (quoting <u>Gianni v. R. Russell & Co. Inc.</u>, 126 A. 791, 792 (Pa. 1924)).

Finally, there is no ambiguity in the Note and Plaintiffs do not claim that there is. "Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." <u>McGuire v. Schneider</u>, 534 A.2d 115, 117 (Pa. Super. 1987). We therefore find that the Note in this case is an integrated contract, and absent an exception, evidence of a prior oral agreement regarding the interest rate is barred.

### b. The Fraud Exception- Fraud in the Inducement v. Fraud in the Execution

"One exception to th[e] general [parol evidence] rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake." <u>Yocca</u>, 894 A.2d at 437. The Pennsylvania Supreme Court, however, explains a significant limitation on this exception depending on the type of fraud case at issue:

> while parol evidence may be introduced based on a party's claim that there was a <u>fraud in the execution</u> of the contract, *i.e.,* that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was <u>fraud in the inducement</u> of the contract, *i.e.,* that an opposing party made false representations that induced the complaining party to agree to the contract.

7

<u>Id.</u> at 437 n.26 (emphasis added) (citing <u>HCB Contractors v. Liberty Place Hotel Associates</u>, 652
A.2d 1278, 1279 (Pa. 1995), and <u>Bardwell v. The Willis Company</u>, 100 A.2d 102, 104 (Pa. 1953).)

    We note that FFMG again offers the bare minimum in terms of presenting an argument, but
that may be due to the fact that it is abundantly clear that here Plaintiffs have set forth a fraud in the
inducement claim.  Plaintiffs state in their Complaint that FFMG "made the [fraudulent]
representations described above with the intent and for the purpose of fraudulently inducing the
Plaintiffs to permit [FFMG] to obtain this mortgage for them . . . ."  (<u>Complaint,</u> at ¶ 21.)   Plaintiffs
further allege that they

>       expressly relied on [FFMG's] representations and would not have signed their mortgage
>       papers reflecting 7%, when being promised 5.25 percent, had they known of the falsity of
>       the representations.

 (<u>Complaint,</u> at ¶ 22.)

    Despite the language of the Complaint, Plaintiffs assert that they "have claimed fraud in the
execution of a contract . . . ."  (<u>Plaintiffs' Opposition to Defendant's Motion to Dismiss,</u> at ¶ 12.)  At
one point in their brief Plaintiffs appear to concede that they are asserting fraud in the inducement
when they state that their parol evidence "to support those portions of the Complaint that discuss the
*fraudulent inducement* to execute the subject lease is admissible."  (<u>Plaintiffs' Memorandum of
Law,</u> at 9 (emphasis added).)  Plaintiffs then assert that they <u>are</u> claiming fraud in the execution by
claiming that FFMG's representations that the interest rate would be 5.25% "'were to be added to
the written agreement but they were omitted because of fraud, . . .'"  (<u>Plaintiffs' Memorandum of
Law,</u> at 10 (emphasis removed) (quoting <u>Toy v. Metropolitan Life Insurance Co.,</u> 863 A.2d 1, 13 n.4
(Pa.Super. 2004).)   Similarly, Plaintiffs claim that a "clause in th[e] contract, which would change
the interest rate [from 7.0% to 5.25%], was fraudulently omitted, . . . ."  (<u>Plaintiffs' Opposition to
Defendant's Motion to Dismiss,</u> at ¶ 18.)

    Plaintiffs again have failed to present an argument in support of their position.  Plaintiffs
merely claim that their allegations fit the definition of fraud in the execution given by the
Pennsylvania Supreme Court.  <u>Yocca</u>., 894 A.2d at 437 n.26 (defining fraud in the execution as "a

term was fraudulently omitted from the contract.")  Plaintiffs contention is contrary to the plain language of their Complaint and the actual claim they are making: that FFMG fraudulently induced them into signing the contract with a 7.0% rate by promising them that it would later convert to a 5.25% rate.  Plaintiffs cannot avoid that they claim "that the representations were fraudulently made and that but for them, [Plaintiffs] never would have entered into the agreement." 1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc., 653 A.2d 663, 667 (Pa. Super. 1995) (defining fraud in the inducement).

In contrast, Plaintiffs were not "defrauded by being led to believe that the document [Plaintiffs were] signing contained terms that were actually omitted therefrom." Id. (defining fraud in the execution).  At the closing Plaintiffs themselves saw that the contract was for a 7.0% rate, and asked why it was not a 5.25% rate as promised by FFMG.  Plaintiffs signed the contract anyway based on the fraudulent representation that the interest rate would sometime later convert to 5.25%.

In addition, the Toy case cited by Plaintiffs is distinguishable.  In Toy, the plaintiff wanted to purchase a retirement plan from Met Life.  She met with a representative for Met Life who told her about a 50/50 Savings retirement plan.  The representative said that she could make $50 monthly payments for approximately twenty years, and accumulate over $100,000, and would also receive the added benefit of life insurance.  In reality, she was sold only a life insurance plan.  She eventually received a life insurance policy in the mail, but never received the 50/50 plan.  Plaintiff filed suit claiming, *inter alia*, fraud and violations of the UTPCPL.  The Toy case concerned a fraud in the execution claim.  Toy, 863 A.2d at 13 n.4 (the "only writing embodying their agreement . . . omitted any reference to a retirement plan").  The Toy plaintiff was promised a retirement plan and a life insurance policy, but she got a life insurance policy that contained no reference at all to a retirement plan.  In contrast, Plaintiffs in this case were promised a 5.25% rate and signed a contract that referred only to a 7.0% rate, they did not sign a contract that omitted any reference to the interest rate.

We conclude that Plaintiffs' have asserted a fraud in the inducement claim and therefore Plaintiffs' may not admit parol evidence in support of their claim.

### c. UTPCPL Claim

Although again neither party sets forth much of an argument, we also conclude that Plaintiffs claim that FFMG violated the UTPCPL must be dismissed.

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca, 894 A.2d at 438 (citing Weinberg v. Sun Co., 565 Pa. 612, 777 A.2d 442, 446 (2001).) Given that the mortgage contract they signed is the complete expression of the parties' agreement thereby barring the alleged fraudulent representations, Plaintiffs "cannot be said to have *justifiably* relied on any representations made by [FFMG] before the parties entered into the [mortgage contract]." Yocca, 894 A.2d at 439. In addition, by signing the contract, which they knew contained a term setting the interest rate at 7.0%, Plaintiffs "disclaimed reliance on any such representations" to the contrary. Id. As the Yocca Court stated, "'a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations.'" Id. (quoting Blumenstock v. Gibson, 811 A.2d 1029, 1035-1036 (Pa. Super. 2002).) Accordingly, we will dismiss Plaintiffs' UTPCPL claim.

### 3. Failure to State a Claim

Having determined that Plaintiff's parol evidence is barred, his Complaint must be dismissed for failure to state a claim upon which relief can be granted. Without the parol evidence the Mortgage Note unequivocally sets the interest rate at 7.0%. Therefore, since the parol evidence rule bars evidence that FFMG made representations not contained in the contract that the interest rate would be 5.25%, Plaintiffs claims are not supported by any evidence. Accordingly, we will dismiss Plaintiffs' claims.

10

### B. FFMG's Alternative Motion to Dismiss

As noted, FFMG also argues that even if Plaintiffs' parol evidence is admitted it is plain that no relief could be granted consistent with the allegations. Given our decision we need not address this issue. Our review of the documents, however, shows strong evidence that Plaintiffs were aware, or should have been aware, that FFMG's references to a 5.25% interest rate for 22.8 years actually referred to Mortgage Savings Plan with an accelerated repayment schedule. (See Ex. 2 attached to the Complaint, and Disclosure, Ex. E attached to Motion to Dismiss.) The Disclosure, signed by Plaintiffs, discloses that FFMG offers or sells a mortgage savings program through a third party, and explains the Mortgage Savings Program as a plan "to facilitate a reduction in overall mortgage payments during the life of a mortgage loan terms." (Ex. E to Motion to Dismiss.) Nonetheless, such a determination would be improper at this stage of the proceedings before any depositions have been taken. FFMG's argument depends upon interpreting the meaning of the unsigned, undated, handwritten worksheet purporting to show that FFMG did promise a 5.25% interest rate of 22.8 years. (Ex. 2 attached to Complaint.) Such a determination is not proper at this stage of the pleadings.

### C. Cross-Motions for Sanctions

FFMG has filed a Motion for Sanctions (Doc. 9) pursuant to Rule 11(b) on the basis that Plaintiffs knew or should have known that their claims have no merit. Plaintiffs have responded (Doc. 12), and in turn, have filed a Motion for Sanctions (Doc. 11) against FFMG pursuant to Rule 11(b) on the basis that FFMG filed its motion for sanctions in bad faith.

We need not go into the details of these motions, which we will deny. Suffice to say that both parties have submitted briefs severely lacking in developed arguments. In addition, as Plaintiffs note, FFMG was unable to discern that the affidavit submitted by Ronald **L.** Harrison, is a different person from Plaintiff Ronald **D.** Harrison. A fact, which can be discovered upon reading the affidavit wherein Ronald L. Harrison states that he is "not on the subject loan," but is named on the deed to the property at issue. In addition, Plaintiffs corrected FFMG in their response to the

11

motion to dismiss, but FFMG repeated their error in its motion for sanctions.  We conclude that there is no basis for sanctions against either party.

**IV.  Conclusion**

Because Plaintiffs' evidence supporting their claims is barred by the parol evidence rule, Plaintiffs' claims will be dismissed for failure to state a claim upon which relief can be granted. Accordingly, we will grant Defendant's motion to dismiss.  The parties' cross-motions for sanctions will be denied.

An appropriate Order will be entered.

    August 22, 2005                          /s/  Maurice B. Cohill, Jr.         
Date                                                Maurice B. Cohill, Jr.,
                                                  Senior District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| **MARY T. MORGAN, and** ) | |
| **RONALD D. HARRISON,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil  No. 04-223 Erie** |
| ) | |
| **FIRST FINANCIAL MORTGAGE** ) | |
| **GROUP, INC.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |


## Order

AND NOW, to-wit, this ____22nd____ day of August, 2005, after careful consideration and

for the reasons set forth in the Opinion accompanying this Order, it is hereby ORDERED,

ADJUDGED, and DECREED as follows:

1.  Defendant's Motion to Dismiss (Doc. 5), be and hereby is GRANTED on all counts for

failure to state a claim upon which relief can be granted;

2.  Defendant's Motion for Sanctions (Doc. 9)  be and hereby is DENIED.

3.  Plaintiffs' Motion for Sanctions (Doc. 11) be and hereby is DENIED.

The Complaint is dismissed and this case is hereby closed


____/s/  Maurice B. Cohill, Jr._____
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:    Arnold Y. Steinberg (by electronic mail)

       Brad N. Sommer (by regular mail)
       Andracki Law Offices
       428 Forbes Avenue
       1801 Lawyers Building
       Pittsburgh, PA 15222-1922